NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DIRECTV, INC. | : | |
| | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No.  03-4371 (DMC) |
| LIONEL POWELL, | : | |
| | : | |
| Defendant. | : | |
| | :: | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by DIRECTV, Inc. ("Plaintiff") for

entry of Default Judgment against Defendant Lionel Powell ("Defendant") pursuant to Federal

Rule of Civil Procedure 55.  No oral argument was heard pursuant to Rule 78.  After careful

review of the record, Plaintiff's motion for Default Judgment is **granted**.

### I. Background

Plaintiff is a California-based company in the business of distributing satellite television

broadcasts throughout the United States.  (Pl. Mov. Br. at 1.)  Plaintiff electronically scrambles

the programming and transmits it from satellites to DIRECTV subscribers who receive signals

through the use of DIRECTV hardware including a small satellite dish, an integrated receiver, a

DIRECTV access card, and cabling.  (Id.)  The DIRECTV access card unscrambles the signals

for those programs for which the subscriber pays.  (Id.)

Simultaneously with the creation of DIRECTV, a number of companies began engaging

in the sale of illegal equipment designed to modify or circumvent Plaintiff's signal-scrambling

technology.  (Id. at 2.)  As a result, on or about May 25, 2001, Plaintiff and local law

enforcement searched a mail shipping facility used by several major sources of pirate

technology. (Id.)  During the search, Plaintiff obtained business records that indicated Defendant

purchased a printed circuit board device called an "Unlooper." from White Viper Technologies

on or about September 12, 2000. (Id. at 2.)  The business records Plaintiff obtained also

indicated that Defendant had the device billed to "Pong Programming Lionel Powell" at an

address in Piscataway, New Jersey.  The Complaint and Summons were served at this address

upon Defendant's mother. (Houck Decl., Exh. A.)  The telephone number listed on the

purchase order was (908) 222-xxxx. (Id.)  The records further indicated that Defendant paid

$299.00 for the Unlooper, plus $20.00 shipping, for a total of $319.00.  (Id.)

White Viper shipped the purchase to "Pong's Programming Mark Smith" at an address

of xxx Netherwood Avenue, Plainfield, New Jersey. (Houck Decl., Exh. A.)  DIRECTV located

records of a subscriber named Lioneo Fowell in Plainfield, New Jersey. (Id.)  The telephone

number listed on the DIRECTV account was (908) 222-xxxx, the same telephone number listed

with Defendant's billing information when he ordered the Unlooper from White Viper. (Id.)

Also, the street number, xxx, in Plainfield, New Jersey, matches the street number listed on the

shipping address listed on the White Viper purchase record. (Id.)

According to DIRECTV's account history, Defendant Powell created and activated his

account on April 28, 1999. (See Sichler Dec.)  Defendant Powell allegedly purchased the

device on September 11, 2000.  Therefore, at the time of purchase, Defendant Powell possessed

all of the tools necessary to use his Pirate Access Device to pirate the DIRECTV signal.

An "Unlooper" is a device used to reenable a modified DIRECTV Access Card that has been disabled by a DIRECTV Electronic Counter Measure.  The Access Card inserts into the Unlooper, and the Unlooper is then inserted into the Integrated/Receiver Decoder "IRD," which is commonly known as a "Receiver" or a "Set Top Box" thereby circumventing DIRECTV's access controls and enabling one to receive DIRECTV services without payment.

Plaintiff filed its Complaint in this Court on September 12, 2003, alleging Defendant Powell violated the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521.  (Comp. at ¶1.)  Plaintiff also alleged that: (i) Defendant possessed and used the device knowing or having reason to know that its design rendered it primarily useful for surreptitiously intercepting DIRECTV's satellite transmissions of television programming and (ii) Defendant received or assisted others in receiving DIRECTV satellite transmissions of television programming without authorization. Comp. at ¶¶23.  Defendant Powell was served with the Summons and Complaint and has not filed an Answer.  (Pl. Br. at 5.)  The Clerk of the Court entered default against Defendant Powell pursuant to Fed. R. Civ. P. 55(a) on February 15, 2005.  Plaintiff now moves for Default Judgment against Defendant Powell pursuant to Fed. R. Civ. P. 55(b)(2).

## II. Discussion

### A. Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  Default judgment is generally disfavored because it prevents a resolution of a plaintiff's claims on the merits.  Thus, when considering a motion for default judgment, a court must exercise sound judicial discretion.  Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d

Cir. 1988).  However, once a default judgment is entered, "it generally is treated as a conclusive

and final adjudication of the issues necessary to justify the relief awarded and is given the same

effect as between the parties as a judgment rendered after a trial on the merits."  10 Wright et al.,

Federal Practice and Procedure, § 2684 at 419-20.  In other words, when a defendant is in

default, the Court treats all pleadings and allegations of the plaintiff as true.  See Comdyne I,

Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  It should be noted, however, that a party

seeking default judgment is not entitled to such relief as a matter of right, even where the

defendant is technically in default.  See E.I. Dupont de Nemours & Co. v. New Press, Inc., 1998

WL 159050, at *2 (E.D. Pa., March 16, 1998) (citing 10 Wright et al., Federal Practice and

Procedure § 2685).

### B. Damages

Plaintiff claims Defendant violated 18 U.S.C. § 2511(1)(a) and § 2512(1)(b) by

purchasing and using illegal access devices designed to intercept Plaintiff's satellite

transmissions with the intent of avoiding payment for these services. (Pl. Br. at 8.)  Pursuant to

18 U.S.C. § 2520(a),  "any person" whose "electronic communication is intercepted, disclosed,

or intentionally used in violation of this chapter" is permitted to recover in a civil action from

"the person or entity" that engaged in the violation.  Available remedies include equitable relief,

damages, reasonable attorneys' fees, and other litigation costs.  18 U.S.C. § 2520(b).  The

"person" allowed to seek relief is any party injured by the defendant's conduct. 18 U.S.C. §

2510(6). "Person" has been defined as including corporations. Id.  Therefore, Plaintiff has

standing to bring this action against Defendant for violating § 2511(1)(a) and § 2512(1)(b).

Pursuant to Section 2520 of the Electronic Communications and Privacy Act, plaintiffs

may recover either actual damages or "statutory damages of whichever is greater of $100 a day

for each day of violation or $10,000."  18 U.S.C. § 2520(c)(2).  Statutory damages are designed

to not only make the plaintiff whole, but to serve as a deterrent by penalizing the wrongdoer.

Schnall v. Amboy Nat'l Bank, 279 F.3d 205, 216-17 (3d Cir. 2002).  Regardless of whether a

plaintiff actually suffered economic harm, statutory damages may still be awarded to serve as a

deterrent.  Id.

Defendant Powell's actions have caused Plaintiff to suffer economic loss.  By

intercepting and decrypting Plaintiff's satellite transmissions, Defendant has avoided paying for

Plaintiff's services while receiving the benefit of free access to its programs.  Every time a

signal from DIRECTV is illegally intercepted, Plaintiff loses revenue.  Although Plaintiff lost

revenue due to Defendants' actions, it is difficult to quantify the damages due to the nature of

the offense.  Due to its inability to calculate the amount of damages, Plaintiff has requested this

Court award the statutory amount of $10,000.00 for damages.  (Pl. Br. at 22).  Due to the nature

of Defendant Powell's violation and the need for this Court to fashion a statutory penalty

sufficient to deter similar conduct, $10,000.00 in statutory damages will be awarded to Plaintiff.

### C. Attorneys' Fees.

Under 47 U.S.C. § 605 (e)(3)(B)(iii) plaintiffs may recover reasonable attorney's fees if

they prevail.  "The court shall direct the recovery of full costs, including awarding reasonable

attorney's fees to an aggrieved party who prevails."  47 U.S.C. § 605 (e)(3)(B)(iii).  Therefore

Plaintiff's request for $1,105.00 for legal fees and $150.00 in filing fees is granted.

Accordingly, Defendant Powell must pay a total of $1,255.00 to Plaintiff.

**D. Injunctive Relief**

The Communications Act provides that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) [of the Communications Act]." 47 U.S.C. § 605(e)(3)(B)(i). The Electronic Communications Privacy Act provides that a court may award "such preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). Accordingly, this Court permanently enjoins Defendant from committing or assisting in the commission of any further violation of 47 U.S.C. § 605, 18 U.S.C. § 2511 or § 2512.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff DIRECTV's Motion for Default Judgment is **granted**. DIRECTV's request for damages and litigation costs is **granted** in the sum of $11,255.00 against Defendant Powell. An Order accompanies this Opinion.

 S/ Dennis M . Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        April 17, 2006
Original:    Clerk's Office
Copies:      All Counsel of Record
                  File